FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2016 APR -8  AM 8:29

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

| | |
|---|---|
| TERRANCE HAYWOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 3:16-cv-420-J-34MCR |
| | ) |
| PACKAGING CORPORATION OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, Terrance Haywood, by and through his undersigned counsel, and by way of this Complaint, and seeks relief against Defendant, Packaging Corporation of America, for violations of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, states as follows:

### PARTIES, JURISDICTION AND VENUE

1.  Plaintiff, Terrance Haywood ("Plaintiff" or "Mr. Haywood"), is an African American male and a citizen and resident of Kingsland, Georgia.

2.  Defendant, Packaging Corporation of America ("Defendant" or "PCA"), is a Delaware corporation authorized to conduct business in Florida, which has its principal place of business in Lake Forest, Illinois.

3.  Defendant PCA is in the business of manufacturing and selling boxes throughout the United States, including a full-line plant located in Jacksonville, Florida (the "Jacksonville Plant").

4. Defendant is, and has been, an employer of Plaintiff at all times relevant to this Complaint, and at all times relevant herein Plaintiff worked at Defendant's Jacksonville Plant.

5. Plaintiff was an employee of Defendant from May 17, 2011 until April 8, 2013, when PCA terminated his employment.

6. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343 and 42 U.S.C. §2000e(5)(f)(3).

7. A substantial part of the acts complained of herein occurred in the City of Jacksonville, Duval County, Florida. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1).

## FACTUAL ALLEGATIONS

8. On or about May 17, 2011, PCA hired Mr. Haywood as a Smart Car Operator at its Full-Line Jacksonville Plant.

9. During Mr. Haywood's employment with PCA at the Jacksonville Plant, he performed his job duties in a competent and professional manner. Plaintiff, at all times relevant herein, held an Associate of Arts degree in Business.

10. Before January 2013, Plaintiff received satisfactory performance reviews and had no serious disciplinary issues. In 1 ½ years of employment, the only discipline he ever received was a verbal warning in 2012.

11. In or around April through May 2012, Plaintiff applied for office positions in customer service and sales with Defendant PCA in Jacksonville, Florida. Mr. Haywood was competent and qualified for the positions he so applied for. PCA, however, denied Mr. Haywood the customer service and sales position applied for. At all times relevant herein, PCA did not

have any African American customer service or sales representatives in its Jacksonville, Florida location.

12. On January 2, 2013, Mr. Haywood suffered an injury to his back while properly performing his assigned job duties.

13. Prior to January 2, 2013, Mr. Haywood and other employees at the Jacksonville Plant had complained to PCA's management about faulty equipment and the risk of injury while operating the Smart Car, but PCA never fixed the problem.

14. On January 2, 2013, Mr. Haywood saw PCA's workers' compensation physician, Dr. Saudia Yaya at Amelia Urgent Care, who spontaneously told Mr. Haywood twice that, "we don't hold people out of work." As Mr. Haywood was more concerned about his injury and had not requested that Dr. Yaya excuse him from work, he was surprised by her emphasis on this issue. After performing an examination, Dr. Yaya placed Mr. Haywood on light duty, but refused to approve any short-term medical leave for him.

15. Although Dr. Yaya told Mr. Haywood that she was placing him on light duty, she checked the "full duty" column on his paperwork. Dr. Yaya stated that she would call Mr. Haywood's supervisors at PCA and tell them what duties he could perform, but she refused to put those restrictions in writing. Mr. Haywood was then placed under the care of Dr. Lance Atkinson.

16. After Mr. Haywood returned to work on January 2, 2013, PCA randomly drug tested him. Over the next two weeks, Mr. Haywood worked in excruciating pain because the medical treatment he received did not relieve the pain. During this time, PCA's management required Mr. Haywood to stand during all or most of his shift, having taken him off his job duties

operating the Smart Car, thus exacerbating the severe pain in his back and legs. Every time Plaintiff sat for a minute to alleviate his back pain, certain PCA managers harassed him about sitting.

17. On January 16, 2013, Mr. Haywood was in so much pain due to his work injury that he had no choice but to call in sick to PCA. Despite knowledge that Plaintiff was out due to his workplace injury, PCA criticized Plaintiff for being out of work.

18. On the afternoon of January 16, 2013, Barry Bort, PCA's Production Manager at the Jacksonville Plant, called Mr. Haywood at home and left him a message, threatening him with termination because he was allegedly out of work. Mr. Bort also advised Mr. Haywood "to come into work so we can take you to the doctor," thus showing that he knew Mr. Haywood was out due to his workplace injury.

19. Following his discussions with Mr. Bort, the afternoon of January 16, 2013, Mr. Haywood also spoke to Lawrence Sparrow, the President of his union, United Steelworkers Union, Local 9292. Mr. Sparrow told Mr. Haywood that although there was no paperwork yet, PCA was trying to fire him. Mr. Lawrence again contacted PCA's managers regarding Mr. Haywood, and PCA instructed Mr. Haywood to return to work. Despite his pain and injury, Mr. Haywood returned to work the next day, January 17, 2013 and met with his supervisors.

20. After Mr. Haywood returned to work on January 17, 2013, PCA's management at the Jacksonville Plant began harassing Mr. Haywood on a continuous basis. PCA management began "watching" Mr. Haywood despite the fact that before his injury, his supervisors had never accused him of poor performance or neglecting his duties. Although Mr. Haywood was on light duty, he continued to experience severe pain in his back and legs, about which he complained to

4

supervisors on almost a daily basis. Since Mr. Haywood could not drive a Smart Car, his supervisors assigned him to other duties

21. On January 18, 2013, PCA Jacksonville Plant General Manager Dan Nelson questioned Mr. Haywood about the back injury of another employee, Mo Green, who is also African American. Mr. Nelson asked Mr. Haywood whether he and Mr. Green had discussed their injuries, thereby implying that Mr. Haywood and Mr. Green had colluded on their injuries.

22. On another occasion, PCA Jacksonville Plant Superintendent Dan McKinney openly stated in the workplace something to the effect that, "these niggers are always trying to get over on FMLA!" This statement appeared to refer to Plaintiff.

23. Based upon his time and experience at the Jacksonville Plant, Mr. Haywood observed that when Caucasian employees were injured, PCA's management did not harass them about their attendance, and PCA's managers placed Caucasian employees in a special area where they would not have to stand for long periods of time or strain their backs. Mr. Haywood was not treated in a similar manner as the Caucasian employees despite his injury.

24. On January 24, 2013, a PCA manager supervising Mr. Haywood, Mr. Keith Miles, instructed Mr. Haywood to locate a towmotor. Mr. Haywood was searching the plant floor for a towmotor when Mr. Nelson confronted him in a hostile manner and asked him why he was "walking around." Mr. Haywood explained that he was doing as instructed by his supervisor. Thereafter, on January 24, 2013, PCA ordered Mr. Haywood to undergo another random drug screen.

25. Also on the January 24, 2013, Mr. Haywood's supervisor, Mr. Miles, informed Mr. Haywood that management had instructed him and other supervisors to write Mr. Haywood up for anything he does wrong.

26. On February 2, 2013, Mr. McKinney directed that Mr. Haywood go back to work on the Smart Car. Although Mr. Haywood complied with this directive, he advised Mr. McKinney that his work restrictions had not changed and his physician had not yet fully released him. After a short time on the Smart Car machine, which bounced up and down as it traveled in a straight line, Mr. Haywood's back and left leg began to ache and went numb. Mr. Haywood again objected to Mr. McKinney regarding the reassignment to the Smart Car. Mr. McKinney finally removed Mr. Haywood from the Smart Car and reassigned him back to work under Mr. Miles.

27. Defendant's management engaged in a campaign of treating Mr. Haywood differently than Caucasian employees who had been injured on-the job at the Jacksonville Plant. Following his injury, PCA management was hostile to Mr. Haywood, harassing him about his attendance and job performance even though Mr. Haywood had never received any discipline for poor performance, neglecting his job duties, or any other reason.

28. Prior to his injury in the workplace, Mr. Haywood had not been asked to take a drug screening while working at PCA. However, following his injury, PCA management singled Mr. Haywood out to undergo repeated random drug tests in a short period of time and refused to abide by the work restrictions issued by his workers' compensation physician, thus jeopardizing Mr. Haywood's health. Although all of Mr. Haywood's absences after his injury were for visits to medical professionals to obtain therapy for his workers' compensation injury,

6

on February 25, 2013, PCA management disciplined Mr. Haywood for these absences and placed him on a Last Chance Agreement.

29. On February 28, 2013, PCA again ordered Mr. Haywood to take another random drug screen. Mr. Haywood successfully passed all PCA ordered drug screenings.

30. On March 7, 2013, Plant Manager Dan Nelson approached Mr. Haywood while he was talking with another employee, Christie Hart. Mr. Nelson congratulated Ms. Hart for going six months straight without an absence and then sarcastically said to Mr. Haywood, "see Terrance, six months isn't anything. You can handle it!" Ms. Hart corrected Mr. Nelson, telling him that since she had missed work yesterday, she did not have perfect attendance.

31. On March 12, 2013, Mr. Haywood was on his way to work when he had a flare up and a reoccurrence of severe leg pain resulting from his workplace injury. Mr. Haywood was therefore forced to revisit Dr. Yaya until he could see his orthopedic surgeon. Although Dr. Yaya recommended that Mr. Haywood receive another pain relief injection, he refused because the seven previous injections he had received had not improved his back. Therefore, Dr. Yaya prescribed Mr. Haywood pain medication which would make him drowsy and she instructed him not to drive a car or operate heavy machinery. Again, Dr. Yaya told Mr. Haywood that she could not hold him out of work and that she could "get in trouble if she did." Dr. Yaya told Mr. Haywood that he should take the medication at lunch time knowing he would have to drive home after work a short time later after his shift ended at 3:00 p.m.

32. On repeated occasions following his injury, Plaintiff told his direct supervisor, Keith Miles, that he felt that PCA management was harassing Plaintiff on account of his race.

7

Mr. Miles stated that he agreed that Mr. Haywood was being harassed in the workplace and treated differently on account of his race.

33. On March 26, 2013, PCA approved Mr. Haywood's request for intermittent Family Medical Leave Act ("FMLA") leave retroactive to February 25, 2013 and continuing through August 25, 2013.

34. On April 2, 2013, Mr. Haywood spoke with a supervisor prior to his shift to notify him that he would be late for his shift due to a doctor's appointment and left a voice mail message for that supervisor advising of him of the same. Also, later that morning, Mr. Haywood spoke with another supervisor, Mr. Miles, about being at a doctor's appointment who advised Mr. Haywood that Mr. Nelson said that PCA had no work for Mr. Haywood. This was not accurate, as Plaintiff knew that there was sufficient work for him to perform for PCA. Mr. Haywood went into work the next day and was told again he would be called if there was work for him. Plaintiff waited at home for a call from PCA summoning him back to work, but no call was forthcoming.

35. On April 8, 2013, Mr. Haywood received a memorandum from PCA stating that PCA had terminated Mr. Haywood "for no call/no show on April 2, 2013," the day he had called into work twice to report that he would be late to work because of the medical appointment.

36. All administrative prerequisites, if any, have been met for each claim brought in this Complaint, and each such claim is timely brought. Furthermore, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") for race discrimination and retaliation by PCA. The EEOC issued and mailed a Notice of Right to Sue to Plaintiff relating to his Charge of Discrimination in March 2016.

## COUNT ONE
### (Violation of 42 U.S.C. § 1981 and Title VII - Discrimination Based on Race)

37. Plaintiff incorporates by reference herein and realleges the allegations in Paragraphs 1 through 36 above as though set forth fully herein.

38. At all times relevant herein, Plaintiff, an African American and was an employee of Defendant.

39. Defendant, by and through its employees and agents, intentionally discriminated against Plaintiff on account of his race and color in violation of 42 U.S.C. § 1981 and Title VII by, *inter alia*, subjecting him to discrimination in hiring for the customer service and sales positions Plaintiff applied for, harassment, differing treatment, false accusations and other behavior that was racially discriminatory, and terminating his employment without cause.

40. Any non-discriminatory reason given for treating Plaintiff differently than similarly situated Caucasian employees is a pretext for unlawful discrimination.

41. The acts and omissions committed by Defendant herein were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

42. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer lost wages, benefits and entitlements, damage to his career and reputation, personal humiliation, emotional distress, mental anguish and loss of enjoyment of life.

## COUNT TWO
### (Violation of 42 U.S.C. § 1981 and Title VII - Retaliation)

43. Plaintiff incorporates by reference herein and realleges the allegations in Paragraphs 1 through 36 above as though set forth fully herein.

44. At all times relevant herein, Plaintiff, an African American, and was an employee of Defendant.

45. Plaintiff engaged in protected activity when he objected to and complained about unlawful discrimination based on his race and color by verbally communicating such objections and complaints to his supervisor by stating that he felt his treatment was a result of his race. On certain occasions when Mr. Haywood made such statements, Mr. Haywood's supervisor Mr. Miles agreed with him.

46. Plaintiff further engaged in protected activity when he objected to and complained to supervisors that he was being treated differently in the workplace than other employees.

47. Defendant, through its employees and agents, took adverse employment action and unlawfully retaliated against Plaintiff in violation of 42 U.S.C. § 1981 and Title VII by terminating Plaintiff for objecting to and complaining about unlawful discrimination on account of his race and color.

48. Defendant's adverse employment actions against Plaintiff were causally related to Plaintiff's protected activity.

49. Any non-retaliatory reason proffered by Defendant for taking such adverse employment actions against Plaintiff is merely a pretext for unlawful retaliation.

50. The acts and omissions committed by Defendant herein, were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

51. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer lost wages, benefits and entitlements, damage to his career and reputation, personal humiliation, emotional distress, mental anguish and loss of enjoyment of life.

## COUNT THREE
### (Violation of 29 U.S.C. § 2614(a)(1) and (2), and 2615(a)(2) - FMLA Discrimination and Retaliation)

52. Plaintiff incorporates by reference herein and realleges the allegations in Paragraphs 1 through 36 above as though set forth fully herein.

53. As an eligible employee under the FMLA, Plaintiff was entitled to and approved to take intermittent FMLA leave for his own serious health condition. Plaintiff took FMLA leave.

54. At all times relevant herein, Defendant employed more than 50 employees at the Jacksonville Plant.

55. Plaintiff was entitled to be restored to the position of employment he held when his leave commenced or to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

56. Plaintiff's taking of FMLA leave should not have resulted in the loss of any of the employment benefits he accrued prior to the date on which his FMLA leave commenced, including his position.

57. Upon Plaintiff's taking of FMLA leave, Defendant discriminated against Plaintiff by treating him differently in the workplace at the Jacksonville Plant and terminating his employment.

58. Plaintiff objected to Defendant's treatment of him in the workplace herein, and thereby opposed, Defendant's discriminatory actions.

59. Within less than 30 days of Plaintiff being approved for taking the FMLA leave to which he was entitled, and after objecting to Defendant's discriminatory actions, Defendant terminated Plaintiff's employment.

60. By the foregoing discriminatory actions and terminating Plaintiff's employment less than 30 days later after he took FMLA leave, Defendant discriminated and retaliated against Plaintiff in violation of 29 U.S.C. 2614(a)(1) and (2) and 29 U.S.C. § 2615(a)(2).

61. Defendant knowingly and willfully violated Plaintiff's rights under the FMLA.

62. As a direct and proximate result of Defendant's intentional discrimination and retaliation against Plaintiff in violation of the FMLA, Plaintiff is entitled to recover the lost wages and benefits associated with his employment, liquidated damages in an amount equal to the lost wages and benefits, pre-judgment interest, post-judgment interest, reasonable attorneys' fees, costs, equitable or injunctive relief, and such other relief as the Court deems just and proper, including, if feasible, reinstatement to a substantially equivalent position with Defendant.

**WHEREFORE**, Plaintiff, Terrance Haywood, respectfully requests that this Honorable Court grant the following relief:

(a) Enter judgment on behalf of Plaintiff and against Defendant on all counts of his Complaint;

(b) Award Plaintiff back pay and front pay;

(c) Award Plaintiff compensatory damages against Defendant in an amount to be determined by a jury;

(d) Award Plaintiff punitive damages permitted under law;

(e) Award Plaintiff reasonable attorneys' fees, court costs, expenses, pre-judgment interest, and post-judgment interest; and

(f) Such other or further relief as the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims in this Complaint.

Dated: April 8, 2016

Respectfully submitted,

Neil L. Henrichsen
Florida Bar No.: 111503
HENRICHSEN SIEGEL, P.L.L.C.
1648 Osceola Street
Jacksonville, FL 32204
(904) 381-8183
(904) 381-8191 (facsimile)
nhenrichsen@hslawyers.com

*Attorney for Plaintiff*